**SUPERIOR COURT
OF THE
STATE OF DELAWARE**

PAUL R. WALLACE                                    LEONARD L. WILLIAMS JUSTICE CENTER
JUDGE                                              500 N. KING STREET, SUITE 10400
                                                   WILMINGTON, DELAWARE 19801
                                                   (302) 255-0660

Date Submitted:  April 14, 2022
Date Decided:  April 19, 2022

Steven L. Caponi, Esquire            John P. DiTomo, Esquire
Matthew B. Goeller, Esquire          Miranda N. Gilbert, Esquire
K&L GATES                            MORRIS, NICHOLS, ARTSHT & TUNNEL
600 N. King Street, Suite 901        1201 N Market Street, Suite 1600
Wilmington, Delaware 19801           Wilmington, Delaware 19801

Roger R. Crane, Esquire              Lynn K. Neuner, Esquire
Joanna A. Diakos, Esquire            Rachel S. Sparks Bradley, Esquire
Kodey M. Haddox, Esquire             SIMPSON THACHER & BARTLETT
Thomas A. Warns, Esquire             425 Lexington Avenue
K&L GATES                            New York, New York 10017
599 Lexington Avenue
New York, New York 10022

    RE:    *Serviz, Inc. v. The ServiceMaster Company, LLC, et al.*
           C.A. No. N20C-03-070 PRW CCLD

Dear Counsel,

    This letter order resolves the Plaintiff's Motion to Dismiss Defendants'

Counterclaims (D.I. No. 113) that the Court heard last week.  For the reasons

explained below, that motion is **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. PRIOR MOTION PRACTICE AND PLEADINGS

The Court detailed the background of this case in its memorandum opinion

and order dated December 6, 2021.[1]  To summarize, Plaintiff Serviz, Inc. and Defendants The ServiceMaster Company, LLC and American Home Shield Corporation ("AHS") signed a Letter of Intent in 2018.  The LOI contemplated that Defendants would acquire Serviz and they "shall endeavor to Close the Acquisition by the end of the Exclusivity Period" defined in the LOI.  In its First Amended Complaint, Serviz alleged Defendants breached the LOI by calling a halt to the acquisition on May 3, 2018.[2]  The acquisition was never finalized, allegedly forcing Serviz out of business.

The Court's December 6th decision addressed three motions:  (1) Defendants' motion for leave to amend its Answer to include certain counterclaims; (2) Defendants' motion to compel; and (3) Serviz's motion for a protective order. The question at the core of each of those three motions was whether Serviz could assert the attorney-client privilege with respect to communications that Defendants had obtained during discovery.  The Court held that Serviz had waived the privilege by intentionally disclosing the communications to third parties after the deal between the parties fell through in 2018.  Accordingly, the Court granted the Defendants'

---

[1]  D.I. No. 89; *Serviz, Inc. v. ServiceMaster Co., LLC*, 2021 WL 5768655 (Del. Super. Ct. Dec. 6, 2021).

[2]  First Am. Compl. (D.I. 13).

motions and denied Serviz's motion.[3]

Defendants then filed their counterclaims.[4]  And Serviz has now moved to dismiss them.[5]

### B. DEFENDANTS' FACTUAL ALLEGATIONS AND COUNTERCLAIMS

In their counterclaims, Defendants allege Serviz materially breached its obligations under the LOI relating to exclusivity and notice procedures. Specifically, Paragraph 7 of the LOI imposed an "Exclusivity Period" while the parties worked towards a definitive agreement:

> In consideration of the time and expenses that Buyer has incurred and will in incur in connection with the proposed Acquisition, [Serviz] agrees that until such time as this Letter has terminated in accordance with the provisions of paragraph 9 (such period, the "**Exclusivity Period**"), neither it nor any of its representatives . . ., officers, employees, directors, agents, stockholders, subsidiaries or affiliates (the "**Company Group**") shall initiate, solicit, entertain, negotiate, accept or discuss, directly or indirectly, any proposal or offer from any person or group of persons other than [ServiceMaster and AHS] and [their] affiliates (an "**Acquisition Proposal**") to acquire any Shares or any portion of [Serviz's] material assets, whether by merger, purchase of stock, purchase of assets, tender offer or otherwise . . . or enter into any agreement, arrangement or understanding (a) requiring it to

---

[3]   At the parties' request, the Court clarified its ruling during a status conference in January 2022. D.I. No. 115.  The remainder of that discovery dispute was resolved by the Special Master just yesterday.  D.I. 148.

[4]   Counterclaims (D.I. 101).

[5]   Serviz's Mot. to Dismiss Counterclaims (D.I. 113).

abandon, terminate or fail to consummate the Acquisition with [ServiceMaster and AHS] or (b) the consummation of which would reasonably be expected to prevent or materially delay the transactions contemplated by the Letter.[6]

In other words, Serviz agreed to refrain from exploring any potential offers to acquire any of Serviz's shares or material assets while the LOI remained in effect. Too, Serviz "agree[d] to immediately notify [ServiceMaster and AHS] if any member of the Company Group receive[d] any indications of interest, requests for information, or offers in respect of an Acquisition Proposal . . . ."[7]

Paragraph 9 of the LOI was a Termination Provision providing that the LOI and Exclusivity Period would automatically renew every seven days until the parties executed a formal acquisition agreement or mutually agreed to terminate, or either party unilaterally chose to terminate.[8] The LOI specified that certain terms were to be "legally binding" and "enforceable obligation[s]," including Paragraphs 7 and 9.[9]

After the parties signed the LOI in March 2018, they endeavored to close the

---

[6] Counterclaims, Ex. 10 at ¶ 7 ("LOI").

[7] *Id.*

[8] Counterclaims at ¶ 9.

[9] *Id.* at ¶ 14.

acquisition by finalizing the due diligence process.[10]  At the end of that month, ServiceMaster and AHS directed their attorneys to send a draft of the definitive agreement to Serviz.[11]  The due diligence process continued throughout April and into the beginning of May 2018.[12]  And the parties negotiated the terms of the definitive agreement throughout that period.[13]

In April 2018, the executives of Serviz began privately discussing whether they should terminate the Exclusivity Period.[14]  On April 22, 2018, Serviz's co-founder and former CEO, Michael Kline, wrote to Adam Wergeles, Serviz's Executive Vice President of Business and Legal Affairs: "If we were to give someone access to the data room not from AHS—i.e. were exclusivity to be rescinded—how much AHS-specific material is there and would it be possible to move those docs into a separate folder accessible only by AHS?"[15]

On April 25, 2018, Mr. Kline emailed Scott Pinizotto, the Senior Director at

---

[10]    *Id.* at ¶ 18.

[11]    *Id.*

[12]    *Id.* at ¶ 19.

[13]    *Id.*

[14]    *Id.* at ¶ 20.

[15]    *Id.* at ¶ 21.

ENGIE, which was one of Serviz's shareholders.[16]  In relevant part, Mr. Kline said "we need to show tangible progress against a set of specific milestones by middle of next week to give confidence to our Board that this is moving towards a likely close" and "[i]n the event we do not see progress against those specific milestones in the next week, we will need to think more seriously about pulling the exclusivity, at a minimum to pursue financing options."[17]  The email continued:

> Because their timing puts us right up against the date when the operations will need cash, I do think it is worth starting the conversation around what a bridge might look like.  I figure we would want to cover up to 8-10 weeks of operation but obviously only draw if needed – so something like $500,000 a tranche up to 3 tranches.  In the case where we ended up going the financing route, this would convert into equity (presumably at some discount to the round) and, in effect, be part of the pro rata consideration you indicated you would be willing to take in the next round.  In the case where we proceed with the acquisition, I suspect this would be more like a loan with some interest (and be paid out of purchase before distribution to shareholders).  Of course, this is entirely up for discussion and obviously you would want more information about the likelihood to close, etc.  Right now, we are just trying to understand our options.[18]

---

[16]  *Id.* at ¶ 21–22.

[17]  *Id.*, Ex. 3.

[18]  *Id.*

Also on April 25, 2018, Mr. Kline texted Zorik Gordon, the other co-founder of Serviz: "No go on acquisition but Engie said bridge possible (terms?) and pro rats for sure if it comes down to that."[19]

On April 28, 2018, Mr. Kline sent an email to Mr. Wergeles "regarding us pulling together a convertible note for Engie," suggesting the "note simply converts to equity on a change in control."[20] Mr. Wergeles responded with an email discussing the terms of the proposed convertible note, on which he copied Mr. Gordon and Serviz's outside counsel, Joshua Rosenfeld.[21]

On May 1, 2018, Mr. Rosenfeld circulated an "initial draft" of the "Convertible Note Facility Term Sheet" to Serviz personnel, including Mr. Kline and Mr. Gordon.[22] In the cover email, Mr. Rosenfeld wrote:

> [W]e also should discuss how you intend to notify AHS about this bridge – the binding exclusivity provision in the AHS LOI arguably applies here (and AHS will find out about the bridge in any event as part of due diligence, so probably best to avoid surprising them).[23]

---

[19] *Id.*, Ex. 2 at 55.

[20] *Id.*, Ex. 4 at 1.

[21] *Id.*, Ex. 5 at 2.

[22] *Id.*, Ex. 5 at 1.

[23] *Id.*

Also on May 1, 2018, Mr. Kline emailed a copy of the draft term sheet to Mr. Pinizzotto. In the cover email, Mr. Kline noted: "Per the terms of the LOI with AHS, we will need to get their consent."[24] That same day, Mr. Rosenfeld emailed a draft waiver agreement for ServiceMaster and AHS to sign.[25] The waiver agreement said that it was intended to advise them that Serviz "proposes to solicit investment from ENGIE New Ventures, S.A., and potentially other existing stockholders of the Company, in the form of indebtedness convertible into the Company's equity (the 'Bridge Financing'). We are seeking your consent to the Bridge Financing."[26] The waiver agreement did not mention that the discussions with ENGIE had already started; however, it requested that ServiceMaster and AHS waive their right to allege a breach of the LOI "in connection with or as a result of the Bridge Financing or the initiation, solicitation, entertaining, negotiation, acceptance or discussion thereof[.]"[27]

---

[24] *Id.*, Ex. 8.

[25] *Id.*, Ex. 9 at 1.

[26] *Id.*, Ex. 9 at 7.

[27] *Id.*

Serviz never presented the draft waiver agreement to ServiceMaster or AHS.[28] Nor did Serviz ever inform ServiceMaster or AHS about its discussions with ENGIE.[29] Instead, Serviz terminated the LOI on May 8, 2018; that termination having an effective date of May 9, 2018.[30] On June 15, 2018, Serviz and 50five B.V., a subsidiary of ENGIE, entered into a "Non-Binding Offer Letter" by which 50five B.V. would acquire Serviz for $5 million.[31] 50five B.V. also provided Serviz with a $600,000 bridge loan on or around June 18, 2018.[32] By July 10, 2018, the potential deal with ENGIE had fallen through "because of a disagreement over strategy . . . ."[33]

Based on these factual allegations, Defendants brought counterclaims for declaratory judgment, breach of contract, and, alternatively, breach of the implied covenant of good faith and fair dealing. Defendants "seek the following: (1) a declaration that the LOI is null and void because Serviz materially breached the LOI,

---

[28] Counterclaims at ¶ 36.

[29] *Id.*

[30] *Id.* at ¶ 37.

[31] *Id.* at ¶ 38 (citing *id.*, Ex. 12 at 3).

[32] *Id.* (citing *id.*, Ex. 13).

[33] *Id.* at ¶ 39 (citing *id.*, Ex. 14 at 1).

and that [Defendants'] performance was excused as of the date of Serviz's material breaches; and (2) a judgment that Serviz is liable for breach of its obligations under the LOI, or alternatively, that it breached the implied covenant of good faith and fair dealing."[34] Defendants identify the breach as Serviz's conduct in "(1) discussing a potential acquisition with ENGIE; (2) entertaining and negotiating a convertible note option with ENGIE that, by the note's express terms, allowed ENGIE to convert its note into equity; and (3) failing to notify [Defendants] immediately of its various discussions with ENGIE regarding a potential acquisition and partial purchase of [Serviz's] shares."[35]

As damages, Defendants "seek recovery of the costs and expenses associated with their efforts to acquire Serviz, plus the costs and expenses, including attorneys' fees, they were forced to incur—wrongfully—in connection with this action and as a result of Serviz's bad faith."[36]

---

[34]  *Id.* at ¶ 6.

[35]  *Id.* at ¶ 53.

[36]  *Id.* at ¶ 6.

## II. STANDARD OF REVIEW

A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[37]  In resolving a Rule 12(b)(6) motion, the Court (1) accepts as true all well-pleaded factual allegations in the complaint; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable factual inferences in favor of the non-movant; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[38]  The Court need not "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[39]  Nor must the Court adopt "every strained interpretation of the allegations" the claimant proposes.[40]  Still, even with those cautions in mind, Delaware's pleading standard is "minimal."[41]  Dismissal is inappropriate unless "under no reasonable interpretation of the facts

---

[37]  Del. Super. Ct. Civ. R. 12(b)(6).

[38]  *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

[39]  *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), *overruled on other grounds by Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).

[40]  *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

[41]  *Cent. Mortg.*, 27 A.3d at 536 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 895 (Del. 2002)).

alleged could the complaint state a claim for which relief might be granted."[42]

Indeed, "[i]f any reasonable conception can be formulated to allow [a claimant's] recovery, the motion must be denied."[43]

Each of these well-established rules that the Court applies to a suit-initiating plaintiff's claims are of equal utility when assessing an answering defendant's (*i.e.*, counterclaim-plaintiff's) counterclaims. [44]

### III. PARTIES' CONTENTIONS

Serviz moves to dismiss all three counterclaims. First, Serviz contends the declaratory judgment counterclaim should be dismissed because: "(i) it seeks to adjudicate past conduct; and (ii) is duplicative of claims that are already at issue in the litigation."[45] Serviz suggests that Defendants effectively seek a ruling that their past conduct was proper, which is "contrary to the purpose and spirit of the Declaratory Judgment Act" and that, in any case, the declaratory judgment goes to

---

[42] *Unbound Partners Ltd. P'ship v. Invoy Holdings Inc.*, 251 A.3d 1016, 1023 (Del. Super. Ct. 2021) (internal quotation marks omitted); *see Cent. Mortg.*, 27 A.3d at 537 n.13 ("Our governing 'conceivability' standard is more akin to 'possibility . . . .'").

[43] *Vinton v. Grayson*, 189 A.3d 695, 700 (Del. Super. Ct. 2018) (citing *Cent. Mortg. Co.*, 27 A.3d at 535).

[44] *inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *4 (Del. Super. Ct. Jan. 26, 2021).

[45] Serviz's Mot. to Dismiss Counterclaims at 16.

issues that will be addressed in connection with Serviz's breach-of-contract and implied covenant claims.[46] In response, Defendants contend Serviz mischaracterizes the relief sought under the declaratory judgment counterclaim; rather, they say, the requested declaration "seek[s] to correct a present wrong that, absent a declaratory judgment to stop it in its tracks, is certain to continue well into the future. That 'wrong' is the continuation of Serviz's bad faith litigation."[47]

Second, Serviz contends the breach-of-contract and implied covenant counterclaims fail because they do not adequately plead injury. Defendants seek to recover as damages the "costs and expenses associated with [Defendants'] efforts to acquire [Serviz], plus the costs and expenses, including attorneys' fees, [Defendants] were forced to incur—wrongfully—in connection with this action as a result of [Serviz's] bad faith."[48] Serviz argues that the text of the LOI precludes recovery of attorney's fees and that, in any case, Delaware law prohibits Defendants from casting attorney's fees as contract damages.[49] In response, Defendants argue that Serviz

---

[46] *Id.* at 16–17.

[47] Defs.' Answering Br. at 28–29 (D.I. 123).

[48] Counterclaims at ¶ 6.

[49] Serviz's Mot. to Dismiss Counterclaims at 18–21.

misconstrue the relevant terms of the LOI and applicable law.[50]

Third, Serviz contends all three counterclaims are time-barred. The parties agree that: (1) the applicable statute of limitations is three years; (2) the causes of action accrued "by at least April 25, 2018;" (3) the counterclaims are time-barred unless Defendants can establish that the limitations periods tolled. They disagree, however, as to whether Defendants can establish tolling under the doctrines of fraudulent concealment and inherently unknowable injuries. Defendants argue the former doctrine applies because Serviz "affirmatively concealed its material breaches of the LOI,"[51] while the latter doctrine applies "due to Serviz's self-evident decision *not* to notify [them] of its breaches and *not* to send the waiver letter."[52]

### III. ANALYSIS

As now explained: (1) the counterclaims are not time-barred; (2) Defendants adequately state a claim for declaratory judgment; and (3) Defendants adequately state claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Accordingly, the Court **DENIES** Serviz's motion to dismiss the

---

[50]  Defs.' Answering Br. at 23–27.

[51]  *Id.* at 9.

[52]  *Id.* at 14.

counterclaims.

## A. THE COUNTERCLAIMS ARE NOT TIME-BARRED.

Defendants contend the counterclaims are not time-barred because the limitations period tolled under the doctrines of inherently unknowable injuries and fraudulent concealment. Defendants are correct on the former, so the Court need not address the latter.

Under the doctrine of inherently unknowable injuries, the statute of limitations is tolled where the injury is "inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[53] In such a case, the statute will begin to run only "upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts."[54] No doubt, our Supreme Court has set a "low threshold for the use of the doctrine of inherently unknowable injury."[55]

---

[53] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004) (internal citation omitted).

[54] *Id.* (internal citation omitted).

[55] *Certainteed Corp. v. Celotex Corp.*, 2005 WL 217032, at *9 (Del. Ch. Jan. 24, 2005) (citing *Wal-Mart*, 860 A.2d 312).

Here, Defendants have adequately pleaded that the facts of and the injury inflicted by Serviz's alleged breaches—*i.e.*, its secret discussions with ENGIE and failure to disclose to them—were inherently unknowable. Defendants' theory is that Serviz was fully aware of its exclusivity and notice obligations while it was negotiating with ENGIE but "concealed everything" about these activities from Defendants.[56] Consequently, the alleged breaches "remained hidden until revealed in discovery" and it was only "years later . . . [when] [Defendants] first learned of Serviz's material breaches."[57] The well-pleaded facts support these claims. The only way Defendants could have discovered Serviz's discussions with ENGIE when they were occurring would have been to read the private emails and text messages of Serviz's executives and legal counsel. Nothing in the pleadings suggest that Defendants had that level of access to Serviz's private communications. Furthermore, by requiring Serviz to "immediately notify" Defendants of any discussions implicating Serviz's exclusivity obligations, the LOI implicitly recognized that Defendants were not in any reasonable position to discover such discussions themselves.[58] Thus, Defendants have adequately pleaded that the

---

[56] Counterclaims at ¶ 36.

[57] *Id.* at ¶¶ 4, 27.

[58] *Id.*, Ex. 10 at 3–4.

alleged breaching conduct and any injury therefrom were inherently unknowable.[59]

Similarly, Defendants have adequately pleaded that they were blamelessly ignorant. Serviz's executives acknowledged that they would need to inform Defendants of their discussions with ENGIE through emails they sent in April and May of 2018.[60] Serviz even went so far as to draft a waiver agreement for Defendants to sign, although Serviz never presented it to them.[61] It could reasonably be inferred from these allegations that Serviz intentionally withheld information that it knew the LOI required it to disclose. Because Serviz kept its discussions with ENGIE quiet, Defendants had no reason to suspect that Serviz might not have been complying with its express obligations under the LOI.

Serviz's argument to the contrary—that Defendants are "sophisticated entities" who had "extensive access of Serviz's books, record, and employees"[62]—

---

[59] See *BTIG, LLC v. Palantir Techs., Inc.*, 2020 WL 95660, at *5 (Del. Super. Ct. Jan. 3, 2020) (finding the doctrine of inherently unknowable injuries applicable because, in part, the plaintiff "alleged that [defendant] had control over the documents that gave rise to its tortious interference claim").

[60] *See* Counterclaims, Ex. 5 at 1 ("[W]e also should discuss how you intend to notify AHS about this bridge – the binding exclusivity provision in the AHS LOI arguably applies here . . ."); *id.*, Ex. 8 ("Per the terms of the LOI with AHS, we will need to get their consent.").

[61] *Id.*, Ex. 9 at 7 (draft waiver agreement requesting Defendants' "consent to Bridge Financing").

[62] Serviz's Mot. to Dismiss at 26.

is unpersuasive. Defendants have pleaded facts suggesting that the only evidence of Serviz's discussions with ENGIE was within Serviz's private communications, which Defendants would not reasonably be expected to review—or perhaps even have access to—as part of ordinary due diligence. At this stage in the proceedings, the Court must accept the facts as alleged in the counterclaims. If factual discovery ultimately reveals that Defendants knew or should have known about the discussions, then a dispositive motion might resolve the matter prior to trial.[63]

Finally, the Court need not decide when Defendants received inquiry notice so that the statute of limitations began to run. The first time Defendants were in a position to learn of the discussions was when discovery began in this lawsuit, which Serviz filed on March 3, 2020. ServiceMaster and AHS moved to bring their counterclaims less than two years later, on October 22, 2021. Even if the three-year statute of limitations began to run as soon as this action was filed, Defendants would have satisfied it. Therefore, their counterclaims are not time-barred.

## B. THE DECLARATORY JUDGMENT COUNTERCLAIM SURVIVES.

"The purpose of declaratory relief is to affect the present behavior of the defendant towards the plaintiff, and it is inappropriate solely to adjudicate past

---

[63] *See BTIG*, 2020 WL 95660, at *6.

conduct."[64]  Here, Serviz argues the declaratory judgment counterclaim "would serve no useful purpose because it seeks to adjudicate past conduct."[65]  Not so.

The counterclaim seeks a declaration that the Letter of Intent was "null and void" by "at least April 25, 2018."[66]  If this declaration were granted, it would nullify all of Serviz's claims under the LOI.  This "could potentially save courts and the parties' considerable time and resources by preventing the need for excess litigation as a result of uncertainties in ultimate liability for past actions."[67]  Thus, it cannot be said that the counterclaim is contrary to the spirit of the Declaratory Judgment Act.  Nor can it be said that Defendants "seek a ruling of this Court that their past conduct was proper," as Serviz posits;[68] instead, Defendants seek a ruling that Serviz's own

---

[64]  *State Farm Mut. Auto. Ins. Co. v. Delaware Diagnostic & Rehab. Ctr., P.A.*, 2021 WL 1929365, at *8 (D. Del. May 13, 2021) (internal citations omitted), *report and recommendation adopted*, 2021 WL 2212295 (D. Del. June 1, 2021); *see also Hampson v. State ex rel. Buckson*, 233 A.2d 155, 156 (Del. 1967) ("[T]he statute permitting declaratory judgment is intended to provide a remedy where no other remedy is available under the circumstances where an impending injury has not yet occurred.  The principal purpose of the statute is to provide preventative justice."); *First State Orthopaedics, P.A. v. Liberty Mut. Ins. Co.*, 2020 WL 6875219, at *4 (Del. Super. Ct. Nov. 20, 2020) ("In other words, declaratory judgment establishes the legal rights of a party before the party is injured, although injury is anticipated.").

[65]  Serviz's Mot. to Dismiss at 16.

[66]  Counterclaims at ¶ 50.

[67]  *Homeland Ins. Co. of New York v. Corvel Corp.*, 2011 WL 7122367, at *5 (Del. Super. Ct. Nov. 30, 2011).

[68]  Serviz's Mot. to Dismiss at 16.

conduct nullified both the LOI and Serviz's claims thereunder.

Second, Serviz contends the declaratory judgment counterclaim needlessly duplicates Serviz's own breach-of-contract and implied covenant claims, as well as Defendants' defenses thereto. Again, not so. Serviz's affirmative claims allege Defendants breached either the LOI or the implied covenant by "calling a halt to the acquisition on May 3, 2018."[69] Conversely, the counterclaim seeks a declaration that the LOI was already null and void by that date on account of Serviz's actions. Thus, the affirmative claims and the counterclaim are based on distinct factual allegations and seek different relief. They are not duplicative.

## C. THE BREACH-OF-CONTRACT AND IMPLIED COVENANT COUNTERCLAIMS SURVIVE.

Defendants allege Serviz breached either the LOI or the implied covenant through their discussions with ENGIE and their failure to notify Defendants of the discussions. As damages, Defendants seek the "costs and expenses associated with [their] efforts to acquire [Serviz], plus the costs and expenses, including attorneys' fees, [they] were forced to incur—wrongfully—in connection with this action and as a result of [Serviz's] bad faith."[70] Serviz argues both claims fail because

---

[69] First Am. Compl. at ¶ 93.

[70] Counterclaims at ¶ 6.

"Defendants fail to allege any cognizable injury or damages as a result of Serviz's alleged breach of the Exclusivity Provision."[71]  Having examined the pleadings to this point, the Court can't agree.

The LOI specified that Serviz agreed to its exclusivity and notice obligations "[i]n consideration of the time and expenses that Buyer [*i.e.* ServiceMaster and AHS] has incurred and will incur in connection with the proposed Acquisition."[72]  To be sure, the parties regarded the obligations relating to the Exclusivity Period as a central part of their bargain under the LOI.  As discussed, Defendants have pleaded facts permitting a reasonable inference that Serviz made a calculated decision to breach these obligations.  In this face of this, Serviz blithely insists that Defendants fail to allege—indeed, cannot allege—"any cognizable injury or damages" as a result of the alleged breach.  As the Court of Chancery explained in *NACCO Industries, Inc. v. Applica Inc.*, albeit under different facts:

> If embraced as grounds for a pleadings-stage dismissal, the defendants' theory would have serious and adverse ramifications for merger and acquisitions practice . . . .  Parties bargain for provisions in acquisition agreements because those provisions mean something. . . . It is critical to our law that those bargained-for rights be enforced, both through equitable remedies such as injunctive relief and specific performance,

---

[71]   Serviz's Mot. to Dismiss at 21.

[72]   Counterclaims, Ex. 10 at § 7.

and, in the appropriate case, through monetary remedies including awards of damages.[73]

Just so here. The Court is wholly "comfortable inferring at this pleading stage that if [Defendants] succeed in establishing a breach of [LOI], it will be able to establish harm sufficient to invoke this Court's remedial powers."[74] In short, "[i]t is certainly a reasonable inference that [Defendants] ha[ve] been damaged."[75] And Serviz does not meaningfully argue otherwise—despite its assertion that Defendants did not plead "injury or damages,"[76] Serviz focuses myopically on the minutia of potential damages while turning a blind eye to how Defendants certainly could be deemed to have suffered an injury.

Serviz then urge with little conviction that both the LOI and Delaware law bar Defendants from the damages it has plead thus far. While Serviz accurately recites certain LOI language—*i.e.*, "[e]ach party . . . will pay its own expenses . . . incurred in connection with the proposed Acquisition"—it ignores later LOI language providing that termination of the LOI "shall not affect any rights any Party has with

---

[73] *NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 19 (Del. Ch. 2009).

[74] *Id.*

[75] *Id.*

[76] Serviz's Mot. to Dismiss at 21.

respect to the breach of this Letter by another Party prior to such termination."[77] That latter provision might reasonably be interpreted as allowing a party to recover damages stemming from another party's pre-termination breach of the LOI, which is precisely what Defendants seek via their counterclaims.[78] And while Serviz is correct that this Court is always reluctant to treat attorney's fees as contract damages,[79] it is also true that "the Court has authority to award attorney['s] fees and costs to prevailing parties when the losing party has acted in bad faith, even if there is no applicable contractual or statutory provision."[80]

As the Court reads the pleadings to this point, certainly "some reasonable conception can be formulated to allow Defendants' recovery"[81] on its claim that

---

[77] Counterclaims, Ex. 10 at §§ 9, 13.

[78] *Cf. Light Years Ahead, Inc. v. Valve Acquisition, LLC*, 2021 WL 6068215, at *6–*7 (Del. Super. Ct. Dec. 22, 2021) (granting motion to dismiss where an agreement provided each party would pay its own legal fees in connection with the agreement with no limitation for pre-termination breaches).

[79] *See, e.g., E.I. Du Pont De Nemours and Co. v. Admiral Ins. Co.*, 1994 WL 465547, at *6 (Del. Super. Ct. Aug. 3, 1994) (rejecting the plaintiff's argument that "the Court should view attorney's fees as compensatory damages because they were 'caused' by [the defendant's] bad faith conduct").

[80] *E.I. du Pont de Nemours & Co. v. Medtronic Vascular, Inc.*, 2013 WL 1792824, at *2 (Del. Super. Ct. Apr. 24, 2013), *aff'd sub nom. E.I. Du Pont Nemours & Co. v. Medtronic Vascular, Inc.*, 77 A.3d 271 (Del. 2013).

[81] *Vinton*, 189 A.3d at 700.

Serviz not only breached the LOI but acted in bad faith by filing a complaint asserting it had "fully performed its obligations under the [LOI]"[82] despite knowing it had breached the LOI.

Now, the Court is not saying that one can adequately plead contract damages with a mere claim for attorney's fees or costs stemming from another party's bad faith—given the pleadings in this case read with the generous eye afforded under a motion to dismiss review the Court need not do so. Nor does or need the Court now hold that Serviz filed its complaint in bad faith—the factual discovery to come may or may not confirm that allegation. All the Court holds here is that Defendants have adequately pleaded that they suffered a legally cognizable injury and that they have a colorable claim to the damages described in their counterclaims.

## IV. CONCLUSION

Having examined the pleadings thus far under Rule 12(b)(6)'s standards the Court cannot say that Serviz has carried its burden to defeat any of Defendants' counterclaims. Given the seemingly warranted application of the inherently unknowable injury doctrine, none are time-barred. The declaratory relief Defendants seek is neither improper nor intolerably duplicative as a counter to the

---

[82]    First Am. Compl. at ¶ 92.

affirmative claims framed by Serviz. And the breach of the LOI and bad faith Defendants allege adequately pen the minimums for a legally cognizable injury and claim to the damages.

Given all this, Serviz's motion to dismiss Defendants' counterclaims must be **DENIED**.

**IT IS SO ORDERED**.

_____
Paul R. Wallace, Judge

Original to Prothonotary